1

2

3                                                    FILED IN THE
                                                   U.S. DISTRICT COURT
                                                 EASTERN DISTRICT OF WASHINGTON

4                                    May 11, 2018

                                                   SEAN F. McAVOY, CLERK

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7   ANGELA DAWN ALLEN,                 No. 2:17-cv-00173-MKD

8              Plaintiff,              REPORT AND
                                       RECOMMENDATION TO DENY
9       vs.                            PLAINTIFF'S MOTION FOR
                                       SUMMARY JUDGMENT AND TO
10  COMMISSIONER OF SOCIAL             GRANT DEFENDANT'S MOTION
                                       FOR SUMMARY JUDGMENT
11  SECURITY,
                                       ECF Nos. 14, 15
12             Defendant.

13        BEFORE THE COURT are the parties' cross-motions for summary

14  judgment.  ECF Nos. 14, 15.  The Court, having reviewed the administrative

15  record and the parties' briefing, is fully informed.  For the reasons discussed

16  below, IT IS RECOMMENDED Plaintiff's Motion, ECF No. 14, be denied and

17  Defendant's Motion, ECF No. 15, be granted.

18

19

20

REPORT AND RECOMMENDATION - 1

1

## JURISDICTION

2    The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

3    1383(c)(3).

4

## STANDARD OF REVIEW

5    A district court's review of a final decision of the Commissioner of Social

6    Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

7    limited; the Commissioner's decision will be disturbed "only if it is not supported

8    by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

9    1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

10    reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

11    (quotation and citation omitted).  Stated differently, substantial evidence equates to

12    "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

13    citation omitted).  In determining whether the standard has been satisfied, a

14    reviewing court must consider the entire record as a whole rather than searching

15    for supporting evidence in isolation.  *Id.*

16    In reviewing a denial of benefits, a district court may not substitute its

17    judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

18    1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

19    rational interpretation, [the court] must uphold the ALJ's findings if they are

20    supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

REPORT AND RECOMMENDATION - 2

1    F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

2    ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless

3    "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

4    *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

5    decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

6    *Sanders*, 556 U.S. 396, 409-10 (2009).

7                          **FIVE-STEP EVALUATION PROCESS**

8           A claimant must satisfy two conditions to be considered "disabled" within

9    the meaning of the Social Security Act.  First, the claimant must be "unable to

10   engage in any substantial gainful activity by reason of any medically determinable

11   physical or mental impairment which can be expected to result in death or which

12   has lasted or can be expected to last for a continuous period of not less than twelve

13   months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's

14   impairment must be "of such severity that [she] is not only unable to do [her]

15   previous work[,] but cannot, considering [her] age, education, and work

16   experience, engage in any other kind of substantial gainful work which exists in

17   the national economy."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

18          The Commissioner has established a five-step sequential analysis to

19   determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

20   404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner

REPORT AND RECOMMENDATION - 3

1    considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i);

2    416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

3    Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

4    404.1520(b); 416.920(b).

5        If the claimant is not engaged in substantial gainful activity, the analysis

6    proceeds to step two.  At this step, the Commissioner considers the severity of the

7    claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

8    claimant suffers from "any impairment or combination of impairments which

9    significantly limits [his or her] physical or mental ability to do basic work

10   activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

11   416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

12   however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

13   §§ 404.1520(c); 416.920(c).

14       At step three, the Commissioner compares the claimant's impairment to

15   severe impairments recognized by the Commissioner to be so severe as to preclude

16   a person from engaging in substantial gainful activity.  20 C.F.R. §§

17   404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

18   severe than one of the enumerated impairments, the Commissioner must find the

19   claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

20

REPORT AND RECOMMENDATION - 4

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

REPORT AND RECOMMENDATION - 5

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On February 6, 2013, Plaintiff applied for disability insurance benefits and supplemental security income benefits, alleging a disability onset date of April 16, 2011. Tr. 185-94. Benefits were denied initially, Tr. 79-102, 131-34, and upon reconsideration. Tr. 103-30, 137-42. Plaintiff appeared for a hearing before an administrative law judge (ALJ) on September 10, 2015. Tr. 29-78. On September 23, 2015, the ALJ denied Plaintiff's claim. Tr. 8-28.

At step one, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2015 and had not engaged in substantial gainful activity since April 16, 2011. Tr. 13. At step two, the ALJ found Plaintiff

REPORT AND RECOMMENDATION - 6

has the following severe impairments: cervical degenerative disc disease, left knee degeneration, fibromyalgia, anxiety, depression, personality disorder, and somatoform disorder. Tr. 13. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 14. The ALJ then concluded that Plaintiff has the RFC to perform a light work with the following limitations:

> she can stand and/or walk for only 4 hours total in an 8 hour work day; she can only occasionally push and pull with her left upper extremity; she can only occasionally use foot controls with her left lower extremity; she can only occasionally reach overhead; she can never climb ladders, ropes, or scaffolds and can perform all other postural activities only occasionally; she cannot have concentrated exposure to extreme cold, vibration, or hazards such as unprotected heights and moving mechanical parts; she is limited to simple, routine, repetitive tasks with reasoning level 2 or less; she cannot have any contact with the public and can have only superficial contact with coworkers and supervisors.

Tr. 16. At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 21. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that the Plaintiff can perform such as small products assembler II, marker II, and plastics inspector. Tr. 22. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since April 16, 2011 through the date of the decision. Tr. 22.

REPORT AND RECOMMENDATION - 7

On March 24, 2017, the Appeals Counsel denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for review:

1. Whether the ALJ properly weighed Plaintiff's symptom claims; and

2. Whether the ALJ properly weighed the medical opinion evidence.

*See* ECF No. 14 at 9.

## DISCUSSION

**A. Plaintiff's Symptom Claims**

Plaintiff alleges the ALJ failed to rely upon clear and convincing reasons in discrediting her symptom claims. ECF No. 14 at 10. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show

REPORT AND RECOMMENDATION - 8

1  that her impairment could reasonably be expected to cause the severity of the

2  symptom she has alleged; she need only show that it could reasonably have caused

3  some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.

4  2009) (internal quotation marks omitted).

5      Second, "[i]f the claimant meets the first test and there is no evidence of

6  malingering, the ALJ can only reject the claimant's testimony about the severity of

7  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

8  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

9  citations and quotations omitted). "General findings are insufficient; rather, the

10  ALJ must identify what testimony is not credible and what evidence undermines

11  the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

12  Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

13  must make a credibility determination with findings sufficiently specific to permit

14  the court to conclude that the ALJ did not arbitrarily discredit claimant's

15  testimony."). "The clear and convincing [evidence] standard is the most

16  demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

17  1015 (9th Cir. 2014) (quoting *Moore v. Comm'r Soc. Sec. Admin.*, 278 F.3d 920,

18  924 (9th Cir. 2002)).

19      In making an adverse credibility determination, the ALJ may consider, *inter*

20  *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

REPORT AND RECOMMENDATION - 9

1   claimant's testimony or between her testimony and her conduct; (3) the claimant's

2   daily living activities; (4) the claimant's work record; and (5) testimony from

3   physicians or third parties concerning the nature, severity, and effect of the

4   claimant's condition. *Thomas*, 278 F.3d at 958-59.

5        The ALJ found that Plaintiff's medically determinable impairments could

6   cause Plaintiff's alleged symptoms, but that Plaintiff's statements concerning the

7   intensity, persistence, and limiting effects of her symptoms were not entirely

8   credible. Tr. 17. The ALJ partially credited Plaintiff's symptom complaints in

9   finding her more limited than described by the state agency physicians, but the

10   ALJ discredited Plaintiff's testimony to the extent she alleged her symptoms were

11   totally disabling. Tr. 20. The undersigned concludes the ALJ provided specific,

12   clear, and convincing reasons for this finding.

13        *1. Daily Activities*

14        The ALJ found that Plaintiff's "described daily activities…are not limited to

15   the extent one would expect, given the complaints of disabling symptoms and

16   limitations." Tr. 20. A claimant's daily activities may support an adverse

17   credibility finding if (1) the claimant's activities contradict her other testimony, or

18   (2) the claimant "is able to spend a substantial part of [her] day engaged in pursuits

19   involving performance of physical functions that are transferable to a work

20   setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*citing Fair v. Bowen*,

REPORT AND RECOMMENDATION - 10

1    885 F.2d 597, 603 (9th Cir. 1989)).  It is reasonable for an ALJ to consider a

2    claimant's activities which undermine claims of totally disabling pain in making

3    the credibility determination.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th

4    Cir. 2001).  However, it is well-established that a claimant need not be "utterly

5    incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.

6         In support of the finding, the ALJ noted that Plaintiff's "ability to handle her

7    own personal care, prepare simple meals, do light housework, go out alone, drive,

8    shop in stores, and handle her finances are not consistent with her testimony

9    regarding debilitating anxiety and extensive body pains."  Tr. 20.  Plaintiff testified

10   she normally leaves the house 10-15 days out of the month and she is able to drive

11   herself to her appointments, drive her mother to her appointments, and sometimes

12   she'll drive to the park.  Tr. 58.  Plaintiff lives with her mother and reported that

13   she helps take care of her mother's medical issues as well.  Tr. 558.  As far as

14   housework, Plaintiff claimed she was able to clean, do laundry, vacuum, and dust,

15   Tr. 236, chores she shares with her mother.  Tr. 69-70.  Plaintiff also reported that

16   she is a compulsive organizer.  Tr. 543.

17        Importantly, the ALJ did not equate these activities with the ability to

18   perform full-time substantial gainful activity, nor did the ALJ base his finding of

19   nondisability exclusively on Plaintiff's daily activities.  Instead, the ALJ

20   permissibly relied on this evidence, in part, to reject Plaintiff's contention that her

REPORT AND RECOMMENDATION - 11

1    reported symptoms of pain and anxiety (which included, for example, panic

2    attacks, Tr. 201, self-isolation, Tr. 239, difficulty concentrating, Tr. 234, and

3    nervousness around others, Tr. 240) substantially limit her functioning to the point

4    of "debilitat[ion]."  Tr. 20.  *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d

5    685, 693 (9th Cir. 2009); *Molina*, 674 F.3d at 1113 ("[e]ven where [Plaintiff's]

6    activities suggest some difficulty functioning, they may be grounds for discrediting

7    the claimant's testimony to the extent that they contradict claims of a totally

8    debilitating impairment."); *Burch*, 400 F.3d at 679 (holding that the ALJ did not

9    err in finding that the claimant's ability to care for her own personal needs, cook,

10   clean, shop, interact with family, and manage her finances suggested that the

11   claimant "was quite functional" and undermined the alleged severity of her

12   impairments).  As in *Molina*, Plaintiff's daily activities are relevant to the alleged

13   degree of severity of Plaintiff's specific symptoms including allegedly debilitating

14   panic attacks, anxiety affecting her ability to engage in human interaction, and

15   pain.  Although the evidence of Plaintiff's daily activities could form the basis of

16   an interpretation more favorable to Plaintiff, the ALJ's interpretation was rational,

17   and the Court must uphold the ALJ's decision where the evidence is susceptible to

18

19

20

REPORT AND RECOMMENDATION - 12

1    more than one rational interpretation." *See Burch*, 400 F.3d at 680-81 (internal

2    quotation marks and alterations omitted).

3    *2. Inconsistent Medical Evidence*

4    The ALJ also concluded that the medical evidence does not support the

5    degree and severity of the Plaintiff's alleged symptoms. Tr. 20. An ALJ may not

6    discredit a claimant's pain testimony and deny benefits solely because the degree

7    of pain alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d

8    at 856; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at

9    601. Medical evidence is a relevant factor, however, in determining the severity of

10   a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §

11   416.929(c)(2). Minimal objective evidence is a factor which may be relied upon in

12   discrediting a claimant's testimony, although it may not be the only factor. *See*

13   *Burch*, 400 F.3d at 680.

14   The ALJ provided a summary of the medical record in his decision and

15   specifically remarked that the medical opinions of testifying medical experts Drs.

16   Klein and Martin, "demonstrate that the claimant's allegations are not fully

17   credible." Tr. 20. Both Drs. Klein and Martin reviewed the longitudinal record,

18   were subject to cross-examination, and concluded the evidence was inconsistent

19   with disabling impairment. Tr. 38-40; Tr. 47-51. Notably, none of Plaintiff's

20   treating or examining physicians and none of the medical experts opined that

REPORT AND RECOMMENDATION - 13

1  Plaintiff was disabled by pain from any source.  Plaintiff generally asserts "[t]his is

2  insufficient rationale for a credibility determination," but does not cite to any

3  specific portion of the record to contest the ALJ's reasoning.  ECF No. 14 at 11.

4      The ALJ's reasons are supported by substantial evidence and together

5  constitute a sufficient basis for discounting Plaintiff's allegations of debilitating

6  pain and anxiety.  As noted above, credibility determinations are within the

7  province of the ALJ's responsibilities and it is not the reviewing court's role to

8  disturb that determination unless it appears the ALJ arbitrarily discredited

9  Plaintiff's symptom claims.  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

10  Where, as here, the ALJ has made specific findings justifying a decision to

11  partially discredit Plaintiff's testimony regarding debilitating symptoms, and those

12  findings are undisputedly supported by substantial evidence, the Court's role is not

13  to second-guess that decision.

14  **B. Medical Opinion Evidence**

15      Plaintiff contends the ALJ improperly weighed the medical opinions of

16  Howard Kenney, M.D., Frank Rosekrans, Ph.D., Marian Martin, Ph.D., Sandra

17  Crowley, LMHC, and Rebecca Reidy, ARNP.  ECF No. 14 at 11-17.

18      There are three types of physicians: "(1) those who treat the claimant

19  (treating physicians); (2) those who examine but do not treat the claimant

20  (examining physicians); and (3) those who neither examine nor treat the claimant

but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (*citing Lester*, 81 F.3d at 830-31 (9th Cir. 1995)).

REPORT AND RECOMMENDATION - 15

### 1. Howard Kenney, M.D.

Dr. Kenney treated Plaintiff at Arthritis Northwest in 2014 and 2015.  He diagnosed Plaintiff with arthralgia and myalgia after tests did not reveal an underlying autoimmune or inflammatory joint disease.  Tr. 434; 528.  After remarking there was "very little on physical examination," Tr. 517, Dr. Kinney concluded that Plaintiff's somatoform pain disorder and "psychiatric issues are adding significantly to her pain."  Tr. 434; *see* Tr. 517-18; 524.  In April 2014, Dr. Kinney's treatment note stated: "Cognitive behavioral therapy is one form of effective therapy although with this patient's history and long-standing symptoms as well as childhood abuse I think give her a very poor prognosis.  She also has very little depth of understanding about chronic pain issues."  Tr. 517.  In 2015, Dr. Kenney noted Plaintiff was "tremendously better" since having been on Cymbalta.  Tr. 528.  The ALJ's opinion clearly indicates he considered the treatment notes of Dr. Kenney, but the ALJ did not assign a specific weight to them.  Tr. 18.

Plaintiff argues it was error for the ALJ to reject Dr. Kenney's statements regarding his belief about her prognosis in cognitive therapy and Plaintiff's depth of understanding about chronic pain.  However, treatment notes, in general, do not constitute medical opinions.  *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("Medical opinions are statements from acceptable medical sources that reflect

1   judgments about the nature and severity of your impairment(s), including your

2   symptoms, diagnosis and prognosis, what you can still do despite impairment(s),

3   and your physical or mental restrictions.").  The Ninth Circuit has found no error in

4   ALJ decisions that do not weigh statements within medical records when those

5   records do not reflect physical or mental limitations or otherwise provide

6   information about the ability to work.  *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*,

7   613 F.3d 1217, 1223 (9th Cir. 2010) (where a physician's report did not assign any

8   specific limitations or opinions regarding the claimant's ability to work, "the ALJ

9   did not need to provide 'clear and convincing reasons' for rejecting [the] report

10  because the ALJ did not reject any of [the report's] conclusions.").

11          Dr. Kenney's comments on the potential effectiveness of cognitive therapy

12  and Plaintiff's depth of knowledge about chronic pain, do not offer opinions

13  regarding Plaintiff's limitations or ability to work.  Accordingly, his treatment

14  notes do not constitute medical opinions the ALJ must weigh and Plaintiff fails to

15  establish that the ALJ neglected to account for any established limitations.  Even if

16  they constituted medical opinions, it is not apparent how the ALJ's failure to

17  assign a specific weight to the statements, after clearly considering Dr. Kenney's

18  records, had any effect on the ultimate decision.  Indeed, Dr. Kenney's opinion

19  regarding the potential effectiveness of cognitive therapy does not detract from Dr.

20

Kenney's later remark that she was "tremendously better" following his treatment with Cymbalta.  Tr. 528.

Accordingly, the ALJ did not err by failing to assign a weight to the treatment notes of Dr. Kenney.

*2. Frank Rosekrans, Ph.D.*

Dr. Rosekrans completed psychological assessments of Plaintiff in 2013 and in 2015.  Tr. 381-90; 542-46.  In the evaluation conducted in January 2013, Dr. Rosekrans indicated Plaintiff experienced a severe limitation in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; a marked limitation in the ability to perform routine tasks without special supervision; a marked limitation in the ability to communicate and perform effectively in a work setting; and a marked limitation in the ability to maintain appropriate behavior in a work setting.  *Id.*  The ALJ rejected these limitations, in part based on the opinion of Dr. Martin, who testified Plaintiff was only moderately limited by her psychological impairments.  Tr. 19.  Because Dr. Rosekrans' opinion is contradicted, the ALJ need only have provided specific and legitimate reasons for rejecting it.  *Bayliss*, 427 F.3d at 1216.

First, the ALJ assigned little weight to Dr. Rosekrans' assessed limitations because they were inconsistent with Dr. Rosekrans' other findings.  Tr. 19.  An opinion inconsistent with the evidence of record and treatment notes constitutes a

REPORT AND RECOMMENDATION - 18

specific and legitimate reason for discounting a physician's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Bayliss*, 427 F.3d at 1216 (permitting ALJ to reject physician's assessment when contradicted by physician's own observations). Here, the ALJ noted that Dr. Rosekrans had observed Plaintiff had normal thought process and content, orientation, perception, memory, fund of knowledge, concentration, abstract thought, insight, and judgment. Tr. 19 (citing Tr. 385). The ALJ could reasonably interpret Plaintiff's performance on the mental status examination as inconsistent with Dr. Rosekrans' opined limitations. *Tommasetti*, 533 F.3d at 1038.

Further, the ALJ correctly observed Dr. Rosekrans did not explain the basis for many of his severe and marked limitations, especially those which were inconsistent with her mental status examination results. Tr. 19. An ALJ may properly discount a doctor's opinion when it is brief, conclusory, and inadequately supported by clinical findings or by the record as a whole. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Thomas*, 278 F.3d at 957. Individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions. *Crane*, 76 F.3d at 253. However, if treatment

REPORT AND RECOMMENDATION - 19

1  notes are consistent with the opinion, a check-box form may not automatically be

2  rejected. *See Garrison*, 759 F.3d at 1014 n. 17.  Here, Dr. Rosekrans provided his

3  opinion on a form which includes check boxes assessing various limitations but

4  very little explanation as to the basis for this assessment.  The only narrative

5  explanation for the limitations assessed were his clinical findings that: "[s]he is

6  severely depressed.  She reports feelings of sadness, loss, worthlessness,

7  hopelessness, and personal failure.  She has lost interest in activities that she used

8  to enjoy."; "[s]he reports anxiety with agoraphobia, is afraid to go out alone, and

9  her activities and job search are restricted; and "[s]pends too much time

10  organizing, for example turning all labels to the front, becomes too anxious if she

11  cannot do compulsive behaviors."  Tr. 382.  The lack of explanation for the severe

12  limitations assessed is a specific and legitimate reason to accord Dr. Rosekrans'

13  opinion less weight.  *Batson*, 359 F.3d at 1195 (9th Cir. 2004); *Garrison*, 759 F.3d

14  at 1014 (9th Cir. 2014).

15      Plaintiff faults the ALJ for disregarding the Personality Assessment

16  Inventory (PAI) test Dr. Rosekrans administered.  ECF No. 14 at 13-15.  Dr.

17  Rosekrans' narrative about the PAI states "[i]t is a good description of her.  It was

18  very valid."  Tr. 382.  The PAI is a personality test based on self-reporting.  It is a

19  diagnostic tool based on Plaintiff's subjective responses.  Tr. 388-89.  The report

20  itself indicates Dr. Rosekrans utilized the tool for this purpose and to assist with

REPORT AND RECOMMENDATION - 20

1  future diagnosis, advising that it "may help to clarify the presenting clinical

2  picture."  Tr. 390 (noting the clinical profile "increase[ed] the possibility of

3  multiple diagnoses").  It does not identify functional limitations or corroborate

4  them.  ALJs "need not discuss all evidence presented to [them]. Rather, [they]

5  must explain why significant probative evidence has been rejected."  *Vincent v.*

6  *Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (internal quotation marks

7  omitted).  While the PAI may have been probative, it was not significant, and

8  therefore the ALJ did not error in failing to discuss the PAI.

9        Finally, the ALJ concluded that Dr. Rosekrans' opinion was "inconsistent

10  with the medical evidence of record as a whole and Dr. Martin's opinion, which

11  reflects that the claimant's psychological symptoms are controlled with treatment."

12  Tr. 19.  An ALJ may reject limitations "unsupported by the record as a whole."

13  *Batson*, 359 F.3d at 1195.  The specific and legitimate reason standard can be met

14  by "setting out a detailed and thorough summary of the facts and conflicting

15  clinical evidence, [the ALJ] stating his interpretation thereof, and making

16  findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  In addition, the

17  effectiveness of medication and treatment is a relevant factor in determining the

18  severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3);

19  *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)

20

REPORT AND RECOMMENDATION - 21

1  (conditions effectively controlled with medication are not disabling for purposes of

2  determining eligibility).

3        The ALJ's decision summarized Dr. Martin's opinion indicating that "many

4  counseling records noted that the claimant was improving and her medications

5  were helping her depression and sleep and keeping her moods stable, at some

6  points feeling good enough to attempt part-time work." Tr. 19. The ALJ further

7  explained that Dr. Martin had opined that "with counseling and medication,

8  [Plaintiff's] anxiety and depression appear to be well-managed and mild at times."

9  Tr. 19. Dr. Martin opined Plaintiff could perform simple, routine, repetitive tasks

10  and would be best working away from the general public, with superficial contact

11  with co-workers and supervisors. *Id*.

12        Plaintiff contends Dr. Rosekrans' opinion is consistent with other evidence

13  in the record including treatment records from her counselors, Sandra Crowley,

14  M.D., Tr. 345-47, Brenda Shanley, ARNP, Tr. 367-78, and Frontier Behavioral

15  Health, Tr. 548-58, and her primary care provider at Associated Family Physicians,

16  Tr. 463-99. Plaintiff does not cite any record ignored by the ALJ or specifically

17  analyze the cited medical evidence. ECF No. 16 at 3. Even the evidence Plaintiff

18  relies upon, however, provides support for Dr. Martin's opinion based upon

19  reasonable inferences from the record that Plaintiff received benefit from treatment

20  through medication and counseling. *See* Tr. 373 ("things are better. Able to sleep

REPORT AND RECOMMENDATION - 22

better, approx. 8-10 hrs! [decreased] anxiety…."; Tr. 345 ("anxiety and depression improving"); Tr. 468 (noting "progress" in counseling for anxiety and PTSD and "fewer panic attacks"); Tr. 477 (assessing generalized anxiety disorder "[w]ell [c]ontrolled"); Tr. 498 (visit for "OCD/anxiety" noting "[m]edications keeping it stable, but needs continued counseling").

It is well established that the ALJ is responsible for resolving conflicts in medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Moreover, an ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. § 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). Plaintiff's argument does not warrant a reversal or remand of the ALJ's decision because it amounts to no more than a dispute about the ALJ's interpretation of the evidence, and "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679.

The ALJ's reliance upon internal inconsistencies, inadequate support, and inconsistency with the record as whole, were specific and legitimate reasons supported by substantial evidence for according little weight to Dr. Rosekrans' opinion.

1          *3. Marian Martin, Ph.D.*

2          Plaintiff generally contends that the ALJ erred by relying on the opinion of

3    testifying psychological expert Dr. Martin.  ECF No. 14 at 16.  Plaintiff contends

4    that the opinion of a non-examining source "cannot itself constitute substantial

5    evidence that justifies the rejection of either an examining physician or a treating

6    physician."  *Id.* at 17.  However, the opinion of a non-examining expert "may

7    constitute substantial evidence when it is consistent with other independent

8    evidence in the record."  *Tonapetyan*, 242 F.3d at 1149.  Moreover, because a

9    testifying medical expert is subject to cross-examination, his opinion may be given

10   greater weight.  *Andrews v Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995).

11         Here, the ALJ did not rely solely upon the opinion of Dr. Martin, but also

12   substantial evidence identified and thoroughly discussed at the administrative

13   hearing, including on cross-examination.  Tr. 44-52.  Moreover, as noted by the

14   ALJ, Dr. Martin is a board certified psychologist with expertise in evaluating

15   medical issues in disability claims who was the only mental health professional to

16   have reviewed all of the relevant medical evidence submitted prior to the hearing.

17   Tr. 19, 43.  Under the regulations, the ALJ could properly credit Dr. Martin's

18   opinion on account of her expertise.  *See* 20 C.F.R. § 416.927(c)(5) ("We generally

19   give more weight to the medical opinion of a specialist about medical issues

20   related to his or her area of speciality than to the medical opinion of a source who

REPORT AND RECOMMENDATION - 24

1  is not a specialist.").  Moreover, the ALJ noted that Dr. Martin's opinion was

2  supported by a "thorough explanation."  Tr. 19.  Plaintiff does not dispute this

3  finding, nor does Plaintiff otherwise identify any aspect of Dr. Martin's opinion

4  that is not supported by substantial evidence in the record.  Thus, no error has been

5  shown.

6        *4. Rebecca Reidy, ARNP* and *Sandra Crowley, LMHC*

7        Under the Social Security regulations in effect at the time of the ALJ's

8  decision, mental health therapists and nurse practitioners were considered an "other

9  source" of information and not an "acceptable medical source."  20 C.F.R. §§

10 404.1513(a), (d), 416.913(a), (d) (amended March 27, 2017).  Opinions of "other

11 sources," are not entitled to the same deference.  *Molina*, 674 F.3d at 1111.  The

12 ALJ may discount opinions from "other sources" if the ALJ gives "germane

13 reasons" for doing so.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

14       In August 2010, the State of Washington's Department of Social and Health

15 Services sent a request to ARNP Reidy to evaluate Plaintiff's functional

16 limitations.  Ms. Reidy completed a functional assessment form stating that

17 because of depression and anxiety, Plaintiff would be unable to work for six

18 months.  Tr. 337-38.  The ALJ assigned this opinion little weight.  Tr. 20.

19       First, the ALJ concluded that the assessment "is not supported by

20 explanation."  Tr. 20.  A medical opinion may be rejected by the ALJ if it is

REPORT AND RECOMMENDATION - 25

1  conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d

2  at 957.  Individual medical opinions are preferred over check-box reports.  See

3  *Crane*, 76 F.3d at 253; *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983).  An

4  ALJ may permissibly reject check-box reports that do not contain any explanation

5  of the bases for their conclusions.  *Crane*, 76 F.3d at 253.  Ms. Reidy's form

6  assessment notes that Plaintiff is "very stressed," has "anxiety with thought of

7  leaving house and going to unfamiliar surrounding[s]," and has difficulty working

8  with other people, focusing, and carrying out tasks.  Tr. 337.  The record contains

9  no other contemporaneous treatment notes from Ms. Reidy or her office.  The

10  ALJ's conclusion that Ms. Reidy's opinion was inadequately explained is a

11  germane reason for rejecting her opinion that Plaintiff could not work.  *See Belcher*

12  *v. Berryhill*, 707 Fed.Appx. 439, 441 (9th Cir. 2017) (unpublished) (finding ALJ

13  gave germane reasons for rejecting opinion that was inadequately explained).

14       Next, the ALJ noted that Ms. Reidy's opinion "precedes Plaintiff's alleged

15  date of onset."  Tr. 20.  Medical opinions that predate the alleged onset of

16  disability are of limited relevance.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*,

17  533 F.3d 1155, 1165 (9th Cir. 2008).  Ms. Reidy's assessment occurred nine

18  months prior to Plaintiff's alleged onset and indicated Plaintiff's limitations were

19  not expected to last beyond six months, therefore, it does not reflect functioning

20

REPORT AND RECOMMENDATION - 26

during the relevant period.  This was another germane reason for rejecting Ms.
Reidy's assessment under *Carmickle*.

Finally, the ALJ concluded that Ms. Reidy's opinion was rendered when
Plaintiff "was sustaining work at the level of substantial gainful activity."  Tr. 20.
Plaintiff contends her 2010 earnings of less than $4,000 did not rise to the level of
"substantial gainful activity."  ECF No. 14 at 16.  The Court need not address this
contention because any error in the ALJ's assessment of Plaintiff's level of work is
harmless.  As discussed above, the ALJ cited other germane reasons, which
support the ALJ's rejection of the evidence.  *Tommasetti*, 533 F.3d at 1038.

Sandra Crowley, LMHC, was Plaintiff's treating mental health counselor
from 2005-2006, 2010-2011, and 2013-2014.  Tr. 305-33, 334-36, 340-44, 345-47,
348-60, 441-54.  In 2011, Ms. Crowley noted Plaintiff's anxiety and depression
were "improving," but that Plaintiff was still having difficulty getting up and going
and reportedly did not feel she could lift much weight.  Tr. 345.  Ms. Crowley
noted Plaintiff should be limited to 11-20 hours per week of work and this
limitation would likely extend 3-6 months.  Tr. 346.  In September 2006, Ms.
Crowley indicated Plaintiff's depression and agoraphobia caused limitations in
energy and focus (which were improving) and she agreed that "20 hours per week
would be a good target to aim for."  Tr. 308.  She did not expect the condition to
last more than 12 months.  Tr. 309.  In August 2006, Ms. Crowley noted Plaintiff

1    was motivated to overcome anxiety and return to work.  Tr. 305.  In June 2005,

2    Ms. Crowley indicated in correspondence that she was working to assist Plaintiff in

3    reducing symptoms of anxiety and depression that are preventing her from work

4    and she hoped she could be ready to return to work by August or September.  Tr.

5    320.  The ALJ assigned Ms. Crowley's opinions "little weight."  Tr. 20.

6         First, the ALJ concluded Ms. Crowley's opinions were not consistent with

7    the record as a whole, including the well-reasoned opinion of Dr. Martin."  Tr. 20.

8    The social security regulations state provide that generally, the more consistent a

9    medical opinion is with the record as a whole, the more weight it is assigned.  *See*

10    20 C.F.R. § 404.1527(c)(4), (f)(1).  An ALJ may reject an opinion that is

11    inconsistent with the record as a whole.  *Batson*, 359 F.3d at 1195.

12         Plaintiff contends the "ALJ fail[ed] to explore or discuss LMHC Crowley's

13    records, which more than adequately support the opinions she formulated over a

14    decade."  ECF No. 14 at 15.  Plaintiff does not cite to any particular portion of the

15    record or otherwise develop this assertion.  To be clear, Ms. Crowley counseled

16    Plaintiff intermittently, not consistently, over the course of ten years.  These

17    records were received and reviewed by Dr. Martin and by the ALJ.  Plaintiff's

18    counsel even specifically questioned Dr. Martin about the record as far of

19    Plaintiff's symptoms of anxiety and panic attacks.  Tr. 50.  Dr. Martin testified that

20    "the counselor notes, a lot of times, . . . said she was improving, doing better, you

REPORT AND RECOMMENDATION - 28

1  know, having reduced symptoms and, at one point, was actually feeling more like

2  she could go out and do some part-time work.  So I think they were looking at

3  getting her out more.  She was, apparently, making progress." Tr. 51.  Dr. Martin

4  also the referred to the April 2013 progress note from her primary care provider,

5  Jeffrey Markin, M.D., where Plaintiff had reported she was "[g]enerally feeling

6  well.  Some anxiety at times and insomnia."  Tr. 413.  At the visit, Dr. Markin

7  renewed Plaintiff's prescriptions for Trazodone and Cymbalta and recommended

8  "lifestyle modifications to include regular aerobic exercise."  Tr. 415.  At

9  Plaintiff's subsequent follow up visit, the progress note indicated Plaintiff was

10  "sleeping ok once getting to sleep but still trouble initiating" and she was referred

11  for additional counseling.  Tr. 412.  Nothing in Ms. Crowley's counseling session

12  notes from 2013-2014, Tr. 441-453, suggest Plaintiff is unable to work.  Tr. 453

13  (noting most troublesome symptoms are depression, restless sleep, and lack of

14  resilience).  The ALJ's interpretation of the medical evidence in light of the

15  medical expert's opinion and in light of the whole record, was reasonable.  Where

16  the evidence is "is susceptible to more than one rational interpretation, [the court]

17  must uphold the ALJ's findings if they are supported by inferences reasonably

18  drawn from the record." *Molina*, 674 F.3d at 1111.  Accordingly, inconsistency

19  with the record was a sufficiently "germane" reason for discounting Ms. Crowley's

20  opinions. *See Molina*, 674 F.3d at 1112 (ALJ provided germane reason where

REPORT AND RECOMMENDATION - 29

1   "other source" opinion was inconsistent with a psychiatrist's opinion, which was

2   entitled to greater weight).

3          Second, the ALJ assigned Ms. Crowley's opinions little weight because "as

4   a whole, . . . they are not supported by explanation." Tr. 20. Because the ALJ has

5   already provided one germane reason, the Court need not address the ALJ's

6   additional reasoning.

7          Plaintiff also contends that Ms. Reidy and Ms. Crowley were not discounted

8   by the ALJ as "other sources," therefore this Court "may not" have the ability to

9   assess whether proper weight was given and any rejection of the evidence must be

10  supported by specific and legitimate reasons. ECF No. 16 at 4; ECF No. 14 at 16.

11  Plaintiff is incorrect. The "other source" designation is a regulatory classification

12  which an ALJ must consider. SSR 06-03P, 2006 WL 2329939, at *6 (Aug. 9,

13  2006). However, it is not a requirement that the ALJ explain the classifications in

14  the decision. Rather, the ALJ is to consider all relevant evidence in the record,

15  including the source's qualifications, and "generally should explain the weight

16  given to opinions from these 'other sources,' or otherwise ensure that the

17  discussion of the evidence in the determination or decision allows a claimant or

18  subsequent reviewer to follow the adjudicator's reasoning, when such opinion may

19  have an effect on the outcome of the case." *Id*. Here, the ALJ specifically

20  acknowledged Ms. Reidy as a nurse practitioner and Ms. Crowley as a "counseling

REPORT AND RECOMMENDATION - 30

professional," and discussed their opinions in light of the entire record.  Tr. 20.

Thus the ALJ's decision demonstrates that he evaluated and rejected their opinions

on their merits.  Accordingly, any alleged error in setting forth their classification

was "inconsequential to the ultimate nondisability determination." *Tommasetti*,

533 F.3d at 1038 (internal quotations omitted).

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, be **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 15, be

**GRANTED**.

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings,

recommendations or report within **fourteen (14)** days following service with a

copy thereof.  Such party shall file written objections with the Clerk of the Court

and serve objections on all parties, specifically identifying the portions to which

objection is being made, and the basis therefor.  Any response to the objection

shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is

REPORT AND RECOMMENDATION - 31

directed to Federal Rule of Civil Procedure 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE MANAGEMENT DEADLINE ACCORDINGLY.**

DATED May 11, 2018.

s/Mary K. Dimke
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION - 32